Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
NJ Attorney ID # 036232017
2220 N. East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Charlene Cheli*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHARLENE CHELI, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>MADISON SQAURE CONDOMINIUM ASSOCIATION, INC., a New Jersey Corporation,<br><br>&<br><br>KAYADUR INCORPORATED, a New Jersey Corporation<br><br>Defendants. | Case No. 1:25-cv-00430<br><br>**COMPLAINT** |

## Introduction

Plaintiff, CHARLENE CHELI, an individual, on her own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendants, MADISON SQAURE CONDOMINIUM ASSOCIATION, INC., a New Jersey Corporation, (hereinafter referred to singularly as "Madison Square Condo") and KAYADUR INCORPORATED, a New Jersey Corporation (hereinafter referred to singularly as "Kayadur"; collectively the "Defendants") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the

1

Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, Charlene Cheli, is an individual over eighteen years of age and is otherwise sui juris. Ms. Cheli resides at 1380 Washington Avenue, Vineland, NJ 08361.

2. Defendant, Madison Square Condo, holds title to a parcel of land which encompasses a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

3. Defendant, Kayadur, operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

## Jurisdiction and Venue

4. Madison Square Condo owns a shopping center, known as Madison Square, located at 782 S Brewster Road, Vineland, NJ 08361[1] (the "Property" or "Shopping Center").

5. Kayadur operates a restaurant known the Black Olive Restaurant & Pizzeria ("Black Olive"), located within Madison Square and known as Unit A1 therein.

6. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

7. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans

---

[1] also being known as Block 4406.05, Lot 7101 on the Municipal Tax Map of Vineland

with Disabilities Act, 42 U.S.C. § 12181 et seq.[2]

8. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

9. The Defendants own, lease, lease to, and/or operate a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendants are thus required to comply with the obligations of the ADA; both in the common areas of the Shopping Center and within the tenant spaces.[3]

10. Plaintiff is an individual with disabilities – as defined by and pursuant to the ADA. Ms. Cheli has been diagnosed with facioscapulohumeral muscular dystrophy and therefore has a physical impairment that substantially limits many of her major life activities[4] including, but not limited to, not being able to walk, stand, reach, or lift. Ms. Cheli requires, at all times, the use of a wheelchair to ambulate.

## Factual Background

11. Ms. Cheli is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of her wheelchair to ambulate) she has dedicated her life to the elimination of accessibility discrimination so that she, and others like her, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers. Ms. Cheli is a member of an advocacy group, known as The Independence Project, whose goal is to foster a community of mobility impaired people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country.

12. Ms. Cheli encounters architectural barriers at many of the places that she visits. Seemingly

---

[2] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[3] 28 CFR § 36.201(a) and 28 CFR § 36.104
[4] as defined by 28 CFR § 36.105(b)(1-2)

trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be dangerous to those in wheelchairs.

13. The barriers to access that Ms. Cheli experiences at differing places of public accommodation are often similar in nature. For example, she is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. She has become frustrated and disheartened by the repetitiveness of the complaints she has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, she now finds her redress through the ADA; as Congress intended.

14. Ms. Cheli has visited the Property many times over the years; her last visit to the Property occurred on or about November 30, 2024. Ms. Cheli visited the Property as a bone fide patron with the intent to avail herself of the goods and services offered to the public within; however, she found it was rife with violations of the ADA – both in architecture and in policy.

15. Ms. Cheli intends to return to the Property not only as a patron but also to monitor any progress made with to respect to ADA compliance – she sincerely hopes that any return visits are not made in vain.

16. Ms. Cheli resides approximately 1.5 miles from the Property.

17. Ms. Cheli has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered her safety at the Property.

18. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Ms. Cheli has actual notice and reasonable grounds to believe that she will continue to be subjected to discrimination by the Defendants.

19.     Ms. Cheli has a realistic, credible, existing, and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers she has personally experienced which are listed in Paragraph 27 of this complaint.

20.     Following any resolution of this matter Plaintiff will ensure that the Defendants undertake the remedial work required to cure existing violations, under the appropriate standard, and in full compliance with the ADA.

## COUNT I
### Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

21.     Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

22.     Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[5]

23.     Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[6]

24.     Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on

---

[5] 42 U.S.C. § 12101(a)(1)

[6] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

the basis of disability." [7]

25.     The Defendants have discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

26.     A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 27 are both technically feasible and readily achievable. Plaintiff's expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

27.     The following are architectural barriers and violations of the ADA that Ms. Cheli has personally encountered during her visits to the Property:

**Parking and Exterior Accessible Route**
  a. The designated accessible parking spaces contain slopes beyond the allowable limit of 2.0% and abrupt changes of level greater than ¼ inch; in violation of the ADAAG and Sections 402 and 502 of the 2010 ADA Standards. These barriers have presented Ms. Cheli with a tipping hazard; she has been forced to park away from the shopping center in a flat maintained area to avoid these obstacles.
  b. The designated accessible parking area fails to provide a safe accessible route which leads

---

[7] 42 U.S.C. § 12188(a)(1)

    from the accessible parking area to the facility entrances/curb ramps. The current route is impeded by excessive sloping, cross-sloping, and abrupt changes of level; a violation of the ADAAG and Section 402, 406, and 502 of the 2010 ADA Standards. These conditions have presented Ms. Cheli with a tipping hazard which could cause injury from a fall and damage to her wheelchair.

c. The exterior accessible route throughout the Property is impeded by cross-sloping beyond the allowable limits and abrupt changes in level; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Ms. Cheli has been impeded by the excessive sloping and abrupt changes of level while traveling through the Property – these conditions present a tipping hazard and could damage her wheelchair.

d. The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. Due to the lack of accessible parking, Ms. Cheli has been forced to park away from the facility and travel across the parking lot; doing so and parking without the benefit of an access aisle adds the additional fear of becoming blocked out from her van (or trapped inside) by an adjacent vehicle.

e. The Property fails to provide a compliant route to the adjacent street/sidewalk. Ms. Cheli has been precluded from accessing the Property at these points of entry due to the lack of an accessible route; a discriminatory omission which limits her options for pedestrian travel and transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

f. The Property fails to provide a continuous accessible route throughout the Shopping

Center; a violation of the ADAAG and Section 402 of the 2010 ADA Standards. Due to the lack of a continuous accessible route Ms. Cheli could not travel freely throughout the Property from one tenant space to another.

**Access to Goods and Services**

g. The Shopping Center provides interior service elements in the various tenant spaces which are mounted beyond the prescribed reach ranges; in violation of the ADAAG and Sections 308, 902, and 904 of the 2010 ADA Standards. Due to their height or the presence of obstacles Ms. Cheli cannot make use of these interior service elements (countertops, work surfaces/desks, etc.).

h. Black Olive fails to provide the requisite number of accessible dining tables; a violation of the ADAAG and Sectoin 902 of the 2010 ADA Standards. Due to the lack of accessible tables Ms. Cheli could not dine in comfortable manner.

i. Entering tenant spaces is impeded by abrupt changes in level at the threshold, excessive sloping at the base of the doors, and improper door hardware; in violation of the ADAAG and Section 404 of the 2010 ADA Standards. Due to these barriers Ms. Cheli could not freely/safely enter the tenant spaces.

**Restrooms**

j. The restrooms within tenant spaces Black Olive and Salon Fabroje are inaccessible to Ms. Cheli and contain architectural barriers to access including a lack of wheelchair maneuvering space, inaccessible water closets which lack proper controls, and improper signage; violations of the ADAAG and Section 601 of the 2010 ADA Standards. Due to these barriers Ms. Cheli could not freely use the restrooms.

k. The aforementioned restrooms provide dispensers which are mounted improperly outside

of proscribed reach ranges and/or impeded by obstructions/obstacles – a failure in policy. These constitute violations of the ADAAG and Section 308 of the 2010 ADA Standards; due to their inaccessibility Ms. Cheli could not freely use the dispensers.

l. The aforementioned restrooms contain improper centerlines for the toilets and improperly mounted grab bars; in violation of the ADAAG and Section 604 of the 2010 ADA Standards. Ms. Cheli could not use the restrooms due the improper location of the toilets, the lack of accessible controls, and the overall lack of accessible features.

m. The aforementioned restrooms contain lavatories which lack the requisite knee clearance; a violation of the ADAAG and Section 606 of the 2010 ADA Standards. Due to the inadequate clearance and lack of accessibility Ms. Cheli could not make use of the sinks.

n. The use of restrooms doors within aforementioned tenant spaces are impeded by improper signage and a lack of wheelchair maneuvering clearance; a violation of the ADAAG and Section 404 of the 2010 ADA Standards. Due to these barriers Ms. Cheli could not freely access the restrooms.

28. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design

("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[8]

29.     The discriminatory violations described in Paragraph 27 may not be an exhaustive list of the ADA violations that exist at the Property but are the result of a preliminary inspection and include those personally experienced by Ms. Cheli. Given the violations discovered and listed herein the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to her disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendants regarding the full scope of this action.[9]

30.     Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury, and damage without the immediate relief provided for by the ADA and requested herein.

31.     Defendants have discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

32.     Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[10]

---

[8] 28 CFR § 36.104

[9] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, she can sue to have all barriers that relate to her disability removed regardless of whether she personally encountered them)

[10] 42 U.S.C. § 12181(b)(2)(A)(iv)

33.     Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[11]

34.     Defendants continue to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[12]

35.     If the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[13] then the Defendants' facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

36.     Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Ms. Cheli, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[14] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendants must meet/exceed to bring the Property into compliance with the ADA.

---

[11] 42 U.S.C. § 12181(b)(2)(A)(ii)
[12] 42 U.S.C. § 12181(b)(2)(A)(iii)
[13] as defined by 28 CFR § 36.401(a)(2)
[14] 28 CFR § 36.402(a)(2)

11

37. Pursuant to 28 CFR § 36.304(a) the Defendants shall remove all existing architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

38. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element – that has not been altered – must comply with or be modified to meet. Those are defined as follows:

   a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

   b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

   c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

39. Plaintiff is not required to notify the Defendants of their violation of the ADA nor their ongoing discrimination prior to the filing of an action, however Ms. Cheli has expressed to employees at the Property that barriers to access exist thereupon. To that end, she has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In her experience the only way to spur action and achieve the accessibility required under the law is to file matters, such as this, and pray for the relief contained herein.

40. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendants, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

41.     Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendants.

42.     Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendants cure all violations of the ADA.[15]

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendants are in violation of Title III of the ADA.

b. Injunctive relief against the Defendants including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendants to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendants to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

---

[15] 42 U.S.C. § 12188(b)(2)

    e.  Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II
### Violation of New Jersey Law
### Against Discrimination, N.J.S.A. 10:5-1 et seq.

43.    Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

44.    The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

45.    New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[16]

46.    As set forth above, the Defendants have violated the LAD by denying Ms. Cheli, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

47.    As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Ms. Cheli has sustained bodily injury in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

    a.  That this Court assume jurisdiction.

    b.  The Court issue a Declaratory Judgment determining that the Defendants are in violation of the LAD.

---

[16] Pursuant to N.J.S.A 10:5-4

c. An injunction ordering Defendants to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendants to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 14th day of January 2025,

>*/s/ Jon G. Shadinger Jr.*
>Jon G. Shadinger Jr., Esq.
>Shadinger Law, LLC
>2220 N. East Avenue
>Vineland, NJ 08360
>(609) 319-5399
>js@shadingerlaw.com
>*Attorney for Plaintiff, Charlene Cheli*

15